**LAW OFFICES OF RICHARD B. VAUGHT**
Richard B. Vaught, Esquire
Email: richard@rbvlawfirm.com
111 W. St. John Street, #500
San Jose, CA  95113
Telephone: 408-275-8523

**DNL ZITO**
Joseph J. Zito (*Pro Hac Vice*)
Email: jzito@dnlzito.com
1250 Connecticut Ave, NW Suite 200
Washington, DC 20036
Telephone: (202) 4663500

**DNL ZITO**
Luiz Felipe Oliveira (*Pro Hac Vice*)
Email: loliveira@dnlzito.com
1250 Connecticut Ave, NW Suite 200
Washington, DC 20036
Telephone: (903) 702 2088

Attorneys for Plaintiff
Game and Technology Co., Ltd

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAME AND TECHNOLOGY CO. LTD <br><br> Plaintiff(s), <br><br> vs. <br><br> RIOT GAMES, INC. <br><br> Defendant. | Case No. 2:16-cv-06486 BRO (SK) <br><br> **OPPOSITION TO MOTION TO STAY LITIGATION PENDING IPR** <br><br> Hearing Info:: <br> Date:      November 7, 2016 <br> Time:      1:30 p.m. <br> Judge:     Hon. Beverly Reid O'Connell <br> Dept.:      14 |

1

Case No. 2:16-cv-06486 BRO (SK)

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................5

II. LEGAL STANDARD ...................................................7

III. ANALYSIS ..............................................................9

    A. The "Simplification" Factor Weighs Heavily Against A Stay Under The Circumstances Of This Case ..……………….................................9

        1. Merely Filing An IPR Petition Alone Does Not Simplify The Issues In This Litigation And Any Possible Simplification Remains Speculative…………………………………………………10

    B.GAT Will Be Unduly Prejudiced And Subjected To Clear Tactical Disadvantage By A Stay……......................................................... 11

    C. Advanced Stage Of This Case Weighs Heavily Against A Stay............... 13

IV. DEFENDANT`S IMPROPER FILING OF THIS MOTION TO STAY ..........16

V. CONCLUSION ..................................................17

Case No. 2:16-cv-06486 BRO (SK)

1

2

# TABLE OF AUTHORITIES

3

## CASES

*Aten, Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, No. SACV 09-0843 AG (MLGx), 2010 WL 1462110 (C.D.Cal. Apr. 12, 2000)........................................................................ 17

*Autom. Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-CV-1727-ORL-37, 2013 U.S. Dist. LEXIS 67790 (M.D. Fla. May 13, 2013) ............................................................................................................................... 5

*Big Baboon, Inc. v. Dell, Inc.*, No. CV 09-1198 SVW, 2011 U.S. Dist. LEXIS 155536 (C.D.Cal. Feb. 8, 2011) ............................................................................................................................... 16

*Biomet Biologics, LLC v. Bio Rich Medical, Inc.*, No. SACV 10-1582 DOC (PJWx), 2011 WL 4448972 (C.D. Cal., Sept. 26, 2011).......................................................... 13

*Chrimar Sys. Inc. v. Adtran, Inc.*, No. 6:15-cv-618-JRG-JDL, 2016 WL 4080802 (E.D.Tex. July 29, 2016)…........................................................................................ 12

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C 06–04206 WHA, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) ........................................................................ 7

*EMG Tech., LLC v. Apple, Inc.*, No. 6:09-cv-367, 2010 WL 10029483 (E.D. Tex. Nov. 15, 2010) ........................................................................................................... 5

*IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030 (C.D. Cal. 2005) .................... 9

*Indiana Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275 (2009).................... 4

*Kla-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661 (N.D. Cal. 2006) ....................................................................................................... 10

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936)…........................................................... 4

*Mophie, Inc. v. nNu Elecs., Inc.*, No. 8:13-cv-01705-CAS, 2014 WL 6775768 (C.D.Cal. Dec. 1, 2014)…........................................................................................ 17

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-cv-213, 2015 WL 627887 (E.D. Tex. Jan. 29, 2015) ............................................................................ 12

*Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, No. SACV 8:12-00021-JST, 2012 WL 7170593 (C.D.Cal. Dec. 19, 2012)…................................... 16

*Shaw Indus. Grp. V. Automated Creel Sys.*, 817 F.3d 1293 (Fed. Cir. March 23, 2016)........................................................................................................................... 9

*Skip Hop, Inc. v. Munchkin, Inc.*, No. 2:15-cv-06339, slip. op. (C.D. Cal. Mar. 15, 2016) ........................................................................................................................ 16

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660 (E.D.Tex. 2005) ................................................................................................................................. 4

*Tierravision, Inc. v. Google, Inc.*, No. 11-cv-2170 DMS (BGS), 2012 WL 559993 (S.D.Cal. Feb. 21, 2012)…...................................................................................... 16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

*Tokuyama Corp. v. Vision Dynamics, LLC*, No. C08-2781SBA, 2008 WL 4452118 (N.D. Cal. 2008) ................................................................................................ 9

*Ultratec, Inc. v. Sorenson Comm., Inc.*, No. 13-cv-346, 2013 WL 6044407 (W.D. Wis. Nov. 14, 2013) ...................................................................................................... 4

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028 (C.D. Cal. May 2, 2013) .................................................................................................. 4

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014) ................................................................................................................ 4

*VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307 (Fed. Cir. 2014) ….................. 2

*Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001) ....................... 5

**STATUTES**

35 U.S.C. § 101 ......................................................................................................... 8

35 U.S.C. § 112 ......................................................................................................... 8

35 U.S.C. § 141(c) .................................................................................................. 13
35 U.S.C. § 154(a) .................................................................................................. 13
35 U.S.C. § 314(b) .................................................................................................... 1
35 U.S.C. § 315(e) .................................................................................................... 9
35 U.S.C. § 316(a)(11) ........................................................................................... 13

**OTHER AUTHORITIES**

37 C.F.R. § 42.107(b) ............................................................................................... 1

Case No. 2:16-cv-06486 BRO (SK)

Plaintiff Game and Technology Co., Ltd. ("GAT") submits this opposition to Defendant Riot Games, Inc.'s ("Riot") Motion to Stay Litigation Pending *Inter Partes* Review (Dkt. 46, "Motion").

## I.   INTRODUCTION

Defendant requests an immediate stay in this litigation in favor of its *Inter Partes* Review petition ("the IPR Petition"). The IPR Petitions request that the Patent Trial and Appeal Board ("PTAB") review the patentability of the asserted claims of the patents being asserted against Defendant on the specified grounds set forth therein.

Under PTAB rules, the PTAB can deny the petition or institute a review as to one or all of the asserted claims. To the extent a review as to any claim is instituted, that review would take years to conclude. Moreover, a decision even as to whether or not to initiate a review would be limited to the specific grounds raised in Defendant's IPR Petition and would not be rendered for approximately six (6) months. 37 C.F.R. § 42.107(b); 35 U.S.C. § 314(b).

Consequently, Defendant's arguments on how a stay would somehow simplify or streamline the issues in this litigation presupposes that the PTAB will grant review of Defendant's IPR Petitions and presumably will do so on all the asserted claims. This is, at best, mere speculation. Even aside from those considerations, Defendant's motion is uncompelling.

Granting Defendant's requested stay would unnecessarily put this case in a deep freeze that would prejudice GAT. As this Court noted, "[t]here could be a two year delay, even before any appellate proceedings that will likely arise out of the *inter partes* review." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1033 (C.D. Cal. May 2, 2013). Two or more years of delay would push this litigation well past the few months in which Defendant asserts it would

take to conclude the IPR procedures and place the asserted Patents in IPR limbo for the majority if not the entirety of its remaining life—a clear tactical disadvantage and undue prejudice to GAT.

Moreover, staying this case would do little to streamline resolution of Defendant's invalidity theories in this case. Defendant's invalidity contentions identified a significant number of so-called invalidating "prior art" publications and alleged numerous and broad ranging invalidity theories. The grounds alleged in Defendant's IPR Petitions represents only one or a small number of those theories. (Exh. 6, 7, and 8, Dkt #102). Thus, even if six months from now, the PTAB decides to institute a review as to one or more of the asserted claims, only one of many of Defendant's invalidity theories would be addressed and then to the extent addressed only disposed of on the merits years later.

It is clear that Defendant timed its IPR Petitions so that it could take advantage of progression of this case on the merits in favor of pursuing its IPR strategy. This is evidenced by the fact that Defendant (1) waited until the last days of the one-year deadline to file its IPR Petitions, (2) waited until after exchange of Claim construction between the parties, and (3) had already provided the alleged prior art asserted in its IPR Petitions and its arguments in its detailed invalidity contentions from June of 2016, which is about four months prior to the IPR Petitions filing. Accordingly, Defendant had no reason to delay filing the IPR, except to gain more time for infringement..

This litigation has progressed significantly. Invalidity contentions have been served along with accompanying document disclosures, substantial discovery has been sought by both sides and meet and confers regarding responses to that discovery has been initiated by both sides. The parties have also exchanged proposed claim constructions and extrinsic evidence pursuant S.P.R 3.2 and will soon have

completed claim construction discovery and submitted a joint claim construction and prehearing statement as required under the governing patent rules.  Accordingly, the benefits of a stay to judicial efficiency are limited.  Furthermore, incremental investment by the Court in this case will effectuate substantial progress on meaningful claim construction issues that the PTAB is not in a position to decide. Claim construction addressing the issues raised in this case, may also benefit the PTAB in its analysis.

On balance, the guiding considerations weigh against a stay in this case. Defendant's arguments are speculative, and a stay would prejudice GAT without meaningfully streamlining this case. Moving forward with claim construction and allowing discovery to continue in its normal course to trial is the more efficient route to resolution. This Court is well positioned to do that.  To the extent Defendant's IPR Petition ever becomes relevant, it can be considered in due course at the appropriate time.  Accordingly, Defendant's Motion should be denied.

## II.    LEGAL STANDARD

The moving party in this case, Defendant, bears the burden of demonstrating that a stay is warranted.  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "A stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion."  *Indiana Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275, 2276-77 (2009).

While granting a motion to stay proceedings pending the outcome of an instituted review proceeding may be favored in some circumstances, there is no "*per se* rule" that patent cases should be stayed pending a patent office proceeding. *Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D.Tex. 2005) (explaining that a *per se* rule would improperly "invite parties to unilaterally

7                    Case No. 2:16-cv-06486 BRO (SK)

derail litigation"); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) (citation omitted).

In cases such as here where a patent office proceeding has merely been requested and has not been instituted, Courts have denied such motions as being speculative and premature. *Ultratec, Inc. v. Sorenson Comm., Inc.*, No. 13-cv-346, 2013 WL 6044407, at *3 (W.D. Wis. Nov. 14, 2013) ("[T]he fact that the Patent Office has not yet granted the petitions to review the . . . patents adds an additional layer of doubt whether the [review] will even occur, let alone whether it will simplify the issues or reduce the burden of litigation for the parties or the court"). The PTAB may deny the petition, or may grant the petition only in part as to all asserted claims of the asserted patents.  Only after an IPR is decided on the merits will the scope and any potential simplification be known.  While "some of the claims may change in this case, the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold." *EMG Tech., LLC v. Apple, Inc.*, No. 6:09-cv-367, 2010 WL 10029483, at *2 (E.D. Tex. Nov. 15, 2010).

Even when a Patent Office review proceeding is instituted and pending, a court is under "no obligation to delay its own proceedings by yielding to ongoing PTO patent [proceedings], regardless of their relevancy to infringement claims which the court must analyze." *Id.* (citing *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution in view of [PTO proceedings].")); *see also Autom. Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-CV-1727-ORL-37, 2013 U.S. Dist. LEXIS 67790, at *3-4 (M.D. Fla. May 13, 2013) ("A stay pending an administrative proceeding is not automatic; rather, it must be based upon the circumstances of the individual case before the court.").

Factors considered when deciding a motion to stay pending an *inter partes* review, include: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1030-31 (C.D. Cal. May 2, 2013). These factors are not exhaustive, however, as the inquiry ultimately is based on the "totality of the circumstances." *Id.*

**Here, there is no pending IPR, only Defendant's request for one**. The factors and the totality of the circumstances in this case clearly weigh against a stay.

## III.   ANALYSIS

### A. The "Simplification" Factor Weighs Heavily Against A Stay Under The Circumstances Of This Case

As an initial matter, Defendant significantly overstates the likelihood that issues will be simplified due to the PTO's review. First, there is no IPR proceeding, there is only petitions requesting the PTO to institute IPRs, and those petitions were filed only days ago. (P.2, Memo. Dkt #102). The filing of the IPR Petition hardly means that an IPR will be instituted and even instituted the outcome would somehow be helpful to efficiently resolving this case. If Defendant loses in whole or part any of the pending claims, Defendant will surely continue to press invalidity as well as other purported defenses that are statutorily barred from consideration in an IPR and that can only be pursued in this litigation. Thus, Defendant's arguments of potential simplification is mere speculation, and promotes only delay and inefficiency. Thus, this "simplification" factor weighs strongly against a stay.

#### 1. *Merely Filing An IPR Petition Alone Does Not Simplify The Issues In*

### *This Litigation And Any Possible Simplification Remains Speculative*

Defendant's presumptuous suggestions that there is a likelihood that all of GAT's infringement allegations will be moot or that a stay has a significant and realistic chance of simplifying the issues are unwarranted. Defendant has not, and at this time cannot, show that a stay due to the IPR review proceeding will simplify the issues in this case. Indeed, it is entirely speculative to presume that the PTAB will institute review of the asserted patents, and if so, for what claims or what grounds.

Even if reviews are instituted, it is also speculative to presume, as Defendant does, that it will simplify the issues for trial. *See Ultratec, Inc. v. Sorenson Comm., Inc.*, No. 13-cv-346, 2013 WL 6044407, at *3 (W.D. Wis. Nov. 14, 2013) ("[T]he fact that the Patent Office has not yet granted the petitions to review the . . . patents adds an additional layer of doubt whether the [review] will even occur, let alone whether it will simplify the issues or reduce the burden of litigation for the parties or the court"). The PTAB may deny the petition, or may grant the petition only in part as to all asserted claims of any of the asserted patents. Only after an IPR is decided on the merits will the scope and any potential simplification be known. While "some of the claims may change in this case, the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold." *EMG Tech., LLC v. Apple, Inc.*, No. 6:09-cv-367, 2010 WL 10029483, at *2 (E.D. Tex. Nov. 15, 2010).

Given the amount of speculation required at this stage, many courts (including this Court) find it improper to assess simplification prior to the PTO's decision on the petition. *See, e.g., Universal Elecs.*, 943 F.Supp.2d at 1033 ("While courts have granted stays before the USPTO has issued a reexamination order .., the fact that the petitions have not yet been granted or denied makes it more difficult to predict whether the issues are likely to be simplified"); *see also Comcast Cable Commc'ns*

*Corp., LLC v. Finisar Corp.*, No. C 06–04206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.").

For this reason alone, Defendant's Motion should be denied. But there is more.

**1. *Defendant's IPR Petition And Motion To Stay Promotes Only Delay And Inefficiency***

Even assuming arguendo that the PTAB institutes review of the asserted patents, it is very unlikely that the IPR review will result in substantive simplification. First, Defendant seems to have raised far more invalidity defenses in the present litigation than in its IPR Petitions. Specifically, Defendant's invalidity contentions identified a significant number so-called invalidating "prior art" publications and alleged numerous and broad ranging invalidity theories. In contrast, Defendant's IPR Petition relies on a significant lower number of reference citations thereby reserving alleged invalidity defenses premised on literally hundreds of other invalidity theories, many of those (e.g., 35 U.S.C. §§112 and 101 theories) can only be decided or developed in the context of this litigation as they are statutorily barred from being considered in an IPR proceeding.

Second, while estoppel applies to the alleged prior art references considered in the PTAB's final written decision, there might be no estoppel for the remaining so called prior art "invalidating" references identified in the present case. As the Federal

Case No. 2:16-cv-06486 BRO (SK)

Circuit authority cited, the decision of reserving invalidity grounds for district court litigation weighs against a stay.  *See VirtualAgility*, 759 F.3d at 1320 ("In some circumstances, a defendant's decision to save key pieces of prior art for district court litigation in case its CBM challenge fails would weigh against a stay.").  Clearly, Defendant seeks to evade the estoppel requirement by reserving the vast majority of its alleged invalidity grounds.

Third, pursuant to recent Federal Circuit decision, there might be no estoppel even for prior art grounds that were raised but rejected by the PTAB at the institution stage of the proceeding.  *See Shaw Indus. Grp. V. Automated Creel Sys.*, 817 F.3d 1293, 1300 (Fed. Cir. March 23, 2016) ("We agree with the PTO that § 315(e) would not estop Shaw from bringing its Payne-based arguments [that were denied at the institution stage] in either the PTO or the district courts.").

Undeniably, Defendant's strategy will inject further expense and delay into the proceedings – and certainly not any efficiency. As such, the majority of the invalidity issues will remain for determination by this Court. This would remove one of the oft-cited benefits of PTAB review; simplification.  District courts have recognized the benefit of a stay is reduced when issues are likely to remain after PTAB review. *See, e.g., Tokuyama Corp. v. Vision Dynamics, LLC*, No. C08-2781SBA, 2008 WL 4452118, at *3-4 (N.D. Cal. 2008); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032-33 (C.D. Cal. 2005).  Defendant cites too many cases where IPR has been viewed as helpful in resolving those cases, but has not demonstrated, beyond mere conclusory statements, how the facts of this particular case make a similar outcome even remotely likely.  For example, Defendant cites to a number of non-precedential opinions for the proposition that an IPR will result in a "relatively short pause" in the proceedings.   As explained above, this promise of a relatively short pause is illusory because it can take two to three years for disposition

of even a single IPR proceeding and related appeal.  See, e.g., *Universal Elecs., Inc.*, 943 F.Supp.2d at 1033 ("[t]here could be a ***two year delay, even before*** any appellate proceedings that will likely arise out of the *inter partes*

review.")(emphasis added).

Defendant's alleged simplification is premised on unwarranted speculation. Defendant has raised broad ranging invalidity theories, many of which can only be resolved here in this litigation, as they are statutorily barred from consideration in an IPR.  Numerous other issues including infringement and damages issues would be forestalled from being developed in favor of a single invalidity theory.  Thus, a stay would not simplify or streamline this case, but rather break it up into multiple pieces thereby unnecessarily complicating and delaying it.

## B. GAT Will Be Unduly Prejudiced And Subjected To Clear Tactical Disadvantage By A Stay

In evaluating prejudice, courts "consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking [administrative review] of a patent." *Kla-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661, at *3 (N.D. Cal. 2006).   Here, it is clear that Defendant timed its IPR Petition so that it could take advantage of progression of this case on the merits in favor of pursuing its IPR strategy.  This is evidenced by the fact that Defendant (1) waited until the last days of the one-year deadline to file its IPR Petitions, (2) waited until after exchange of Claim construction between the parties, and (3) had already provided the alleged prior art asserted in its IPR Petitions and its arguments in its detailed invalidity contentions from June of 2016, which is about four months prior to the IPR Petitions filing. Accordingly, Defendant had no reason to delay filing the IPR, except to gain more time for infringement.

Here, Defendant chose to exclude most of the known, alleged prior art in its

IPR petitions. Notably, the Federal Circuit has previously addressed this issue by stating that "[f]ailure to include other known prior art in the CBM petition could ... create a potential tactical advantage for defendants that would weigh against a stay". *VirtualAgility*, 759 F.3d at 1315. This partial assertion or "splitting" of invalidity grounds provides Defendant with two separate opportunities in two separate forums to challenge the validity of the asserted patents. Consequently, granting a stay would create a clear tactical advantage for Defendant by permitting it to stall litigation while also affording Defendant a second bite of the apple when it challenges the validity of the asserted patents at trial. As GAT would be unduly prejudiced and Defendant would be afforded an unfair tactical advantage, this factor weighs heavily against a stay.

Defendant's contention that it diligently prepared a petition for IPR without delay (Motion, Dkt #102) is not true. Despite knowing about the asserted claims at least as early as October of 2015 (when the complaint was served), Defendant waited for almost one year to file its IPR Petition. Defendant certainly knew of its invalidity positions when it served its Invalidity Contentions in June of 2016. Instead, it waited until ***after*** GAT served its proposed claim construction (per S.P.R. 3.2) in this case. It appears that Defendant was attempting to gain a tactical advantage by using the claim construction proceedings in this case to elicit information for its IPR Petition. The delay was therefore calculated.

Defendant labels GAT as a non-practicing entity that does not compete with Defendant to justify its lack of prejudice position. (Dkt #102). The mere fact that GAT does not sell products that compete with Defendant, does not preclude GAT from experiencing prejudice if the Court granted Defendant's motion to stay. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-cv-213, 2015 WL 627887, at *2 (E.D. Tex. Jan. 29, 2015) ("The mere fact that [plaintiff] is not currently

practicing the patents does not mean that, as a matter of law, it is not prejudiced by a substantial delay of an imminent trial date."); *Chrimar Sys. Inc. v. Adtran, Inc.*, No. 6:15-cv-618-JRG-JDL, 2016 WL 4080802, at *2 (E.D.Tex. July 29, 2016) ("The fact that Chrimar does not sell products that compete with Dell and Aerohive would not preclude Chrimar from experiencing prejudice if the Court granted Defendants' motion to stay.")

Here, GAT has an interest in the timely and cost effective enforcement of its patent rights, particularly given the limited remaining life of the asserted patents. As previously noted, the IPR review proceeding has not even been instituted. Even if instituted, the process can take two to three years to reach completion. First, after the petitioner files the petition, the patent owner has three months to file its preliminary response to the petition. 37 C.F.R. § 42.107(b). The PTO then has three more months to determine whether to institute the *inter partes* review or deny the petition. 35 U.S.C. § 314(b). Accordingly, it will take approximately six months from the date Defendant filed its petitions before the PTO decides whether to accept or deny the requests. *Id.* If the PTO decides to institute an *inter partes* review, it will then take at least a year (some time in 2019), or in certain cases up to eighteen months to decide the case. *Id.* § 316(a)(11). Finally, after the PTO concludes its review, either party may appeal the decision to the Federal Circuit. *Id.* § 141(c). The median time to disposition of an appeal in the Federal Circuit from a PTO proceeding is 10 months. LaPorte Decl., Ex. 1. Thus, it is reasonable to expect that an *inter partes* review procedure will take between two to three years from start to finish, and could delay this case well beyond 2019.

Such a lengthy delay will result in significant prejudice and tactical disadvantage to GAT. 35 U.S.C. 154(a); *Biomet Biologics, LLC v. Bio Rich Medical, Inc.*, No. SACV 10-1582 DOC (PJWx), 2011 WL 4448972, *2 (C.D. Cal., Sept. 26,

2011) ("Placing the '007 patent in limbo for the majority of its remaining life would create a clear tactical disadvantage for Plaintiffs. Thus, the prejudice factor weighs strongly against granting Defendants' Motion to Stay."). For this reason alone, Defendant's Motion should be denied with prejudice.

Finally, Defendant's lamentations of prejudice associated with being forced to continue to litigate in this Court and being subjected to possibly inconsistent results from the USPTO and a jury, is unavailing. The filing of the IPR Petition was of Defendant's own doing, and it has no one to blame but itself. Defendant could have simply asked the Court to resolve these very same invalidity grounds through a motion for summary judgment. Defendant should not be allowed to exploit its self-inflicted burden to obtain a stay.

In short, given Defendant's conduct and the prejudice to GAT, this factor weighs strongly in favor of denying Defendant's Motion.

### C. Advanced Stage Of This Case Weighs Heavily Against A Stay

This case has already progressed significantly. Not surprisingly, Defendant understates the degree of substantive work that has already been performed. From the time this litigation has commenced, invalidity contentions have been served with supporting documentation, and claim construction is underway. GAT spent a significant amount of time and resources to analyze these publications and suggested combinations with its expert to evaluate the deficiencies in Defendant's invalidity contentions. As in *Universal Elecs.*, discovery is also ongoing. *See Universal Elecs., Inc.*, 943 F.Supp.2d at 1031-32.

Thus, this factor also weighs against granting Defendant's motion to stay.

### IV. DEFENDANT`S IMPROPER FILING OF THIS MOTION TO STAY

16                    Case No. 2:16-cv-06486 BRO (SK)

This motion has been improperly filed in violation of Local Rule 7-3. Because Defendant has not met and conferred 7 days prior to filing of its motion to stay, Defendant`s motion must be denied, especially in view of the fact that is resulted in Plaintiff`s detriment and reduced time to oppose to this motion.

L.R. 7-3 provides:

> L.R. 7-3 Conference of Counsel Prior to Filing of Motions. In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. **The conference shall take place at least seven (7) days prior to the filing of the motion**. If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall include in the notice of motion a statement to the following effect:

Defendant`s counsel alleges that on October 7, 2016 counsel met and conferred with Plaintiff GAT`s counsel regarding filing of this motion to stay.

On October 10, 2016 Defendant filed this motion and notice of motion. The filing was 3 days after Defendant met and conferred with Plaintiff.

Additionally, the notice indicated that this matter will be heard on November 7, 2016 at 1:30pm. Because Plaintiff is required to file its opposition 21 days before the hearing date under L.R. 7-9, Plaintiff was left with only about10 days to oppose to Defendant`s motion to stay.

Or this reason alone, Defendant`s motion should be denied as indicated by this Court in other cases, such as the following:

> "The parties met and conferred regarding Plaintiff's Motion for Reconsideration on the same day that Plaintiff filed its Motion. This

17

Court has already warned Plaintiff that, if a motion is filed less than seven days after the Local Rule 73 conference, the court may, in its discretion, refuse to consider the motion for that reason. See, e.g., Reed v. Sandstone Properties, L.P., No. CV 1205021 MMM (VBKx), 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013); see Order re: Pl.'s Mot. Dismiss Defs.' Sec. Am. Countercl. 8:710, ECF No. 166 ("[T]he Court admonishes Plaintiff of the seriousness of its failure to comply with the Local Rules and cautions Plaintiff to comply with Local Rule 73 in the filing of any future motions."). On this ground alone, the Court DENIES Plaintiff's Motion for Reconsideration." (Ketab Corp. v. Mesriani Law Group, Dist. Court, CD California 2016)

Because Defendant failed to comply with L.R. 7-3, Defendant`s motion should be denied.

## V.    CONCLUSION

Based on the totality of the circumstances, the Court's factors collectively weigh against a stay in this case.  In light of the foregoing, Defendant's Motion to stay should be denied.

In the alternative, a decision on Plaintiff`s motion to stay should be denied, the hearing on November 7, 2016 should be reschedule, and the litigation should proceed at least until after the PTAB makes a decision on whether to institute the *Inter Partes* Review, as Defendant`s Motion to Stay Pending IPR is premature because the *Inter Partes* Review has **not even been instituted**.

18                    Case No. 2:16-cv-06486 BRO (SK)

Dated: October 17, 2016          **LAW OFFICES OF RICHARD B. VAUGHT**


By:   */s/ Richard B. Vaught*
      Richard B. Vaught
      Attorney for Plaintiffs
      LARRY AND KARIN WILLARD

## **PROOF OF SERVICE**

I served the following documents as follows:

### **OPPOSITION TO MOTION**
### **TO STAY LITIGATION PENDING IPR**

*Counsel for Plaintiffs*

☐   (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Denver, Colorado.

☐   (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy  of the foregoing document in sealed envelopes or packages  designated  by  the  express  service  carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐   (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service.  A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐   (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐   (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an  agreement  of  the  parties  to  accept  service  by  e-mail  or  electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses  listed.  I  did  not  receive,  within  a  reasonable  time  after  the transmission,  any  electronic  message  or  other  indication  that  the transmission was unsuccessful.

☒   (CM/ECF  Electronic  Filing)  I  caused  the  above  document(s)  to  be transmitted to the office(s) of the addressee(s) listed above by electronic mail  at  the  e-mail  address(es)  set  forth  above  pursuant  to Fed.R.Civ.P.5(d)(1).  "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

1

2       I declare under penalty of perjury that I am employed in the office of a member of
the bar of this Court at whose direction this service was made and that the foregoing
3    is true and correct.

4    ☐   (State)      I declare under penalty of perjury under the laws of the State of
California that the above is true and correct.

5    ☒   (Federal)    I declare that I am employed in the office of a member of the Bar of
this Court at whose direction the service was made.  I declare under
6                     penalty of perjury under the laws of the United States of America
7                     that the above is true and correct.

8       Executed on  **October 17, 2016**.

9

10

11    _____        _____
        Richard B. Vaught              */s/ Richard B. Vaught*
12      (Type or print name)              (Signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28